THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. CARLOS M. CABRERA LOZADA, Defendant and Appellant.

No. CR-70-66.     Decided March 5, 1971.

*Yamil Galib Frangie* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

PER CURIAM: Carlos Cabrera Lozada was accused and convicted of the offense of statutory rape consisting in that on or about April 10, 1965, he had sexual intercourse with a fifteen-year-old girl, who at the time was handicapped by a mental defect for the purpose of consenting. He was sentenced to serve from three to seven years in the penitentiary.

The following persons testified at the trial (1) the prosecutrix, in connection with the sexual intercourse which ap-

pellant had with her, the circumstances under which the act charged was performed, other of her actions and her school work; (2) neurologist, Dr. Luis Guzmán López, to the effects that the prosecutrix suffers from a chronic brain syndrome, a condition which produces an incapability to reason normally for which reason, in his opinion, she was incapable of consenting to a sexual act; (3) Dr. Carlos Alemañy about the examination of the prosecutrix after the occurrence of the events; (4) Erania Espaillat Félix, about her conversation with the prosecutrix who told her about the sexual act which appellant performed upon her; (5) Elisabeth Mangual about an admission which appellant made to her that he had lived with the prosecutrix; (6) the prosecutrix's younger brother and (7) Dr. Paul N. Senior, clinic psychologist, who performed two tests on the prosecutrix, one of visomotor coordination which establishes how the person examined coordinates and understands reality and the other which measures her intelligence, in view of which, after his interview with the prosecutrix, this doctor concluded that the prosecutrix, "was functioning at the level of a feebleminded person, what we call an imbecile" however, she can learn to read and write and take dictation as it appears from a notebook of the prosecutrix which was shown to him.

On appeal appellant assigns a series of contentions which we shall consider hereinafter. In our opinion we should not disturb the ruling in this case.

1. He assigns that the trial court erred in permitting that Dr. Guzmán be asked and state his view about whether the prosecutrix was legally incapable to consent to the sexual act.

He argues that the doctor was not charged as to what is understood by legal consent; that he is a neurologist who had never performed any tests on the prosecutrix concerning her personality as this is not his field nor asked her questions about the sexual act and its implications.

The assignment lacks merit. Although it is true that the prosecuting attorney used the expression "legally", he omitted it in repeating the question before the expert answered.

■ This expert, duly qualified as a neurologist, testified that on the basis of the history and his examination of the prosecutrix the latter suffered from a chronic brain syndrome accompanied by a convulsive brain disorder; "that this condition produces in these children an incapacity to reason normally . . . ." It was on the ground of a detailed exposition of this situation that the expert later concluded that the prosecutrix was incapable to consent to the sexual act.

2–3. He argues that it constituted an error to permit witness Erania Espaillat Félix to testify about the alleged statements which the prosecutrix made to her and to decide that these statements were part of the *res gestae* and as such were admissible in evidence.

■ It is true that Mrs. Espaillat was the second person to whom the prosecutrix related the sexual act which was performed upon her person by appellant. The other one was her mother who was not able to testify against appellant as the latter was her husband. Such statements were made shortly after the events by a mentally disabled person, mechanically, without any coercion or pressure whatsoever. It was not the product of a calculated reasoning for the purpose of prejudicing appellant. Because she was unable to reason, the prosecutrix rather repeated, at anyone's request, the experience had. We conclude that these were special circumstances which justified admitting Mrs. Espaillat's testimony of corroboration. *People* v. *Bonilla Vázquez*, 98 P.R.R. 816, 818 (1970) ; *People* v. *Echevarría Rivera*, 96 P.R.R. 154, 155 (1968) ; *People* v. *Aponte*, 77 P.R.R. 870, 872 (1955).

■ 4–5–6–7. He assigns that the trial court erred in undertaking, during the stage of the instructions to the jury, to analyze and confront the evidence of the prosecution with

the elements to be proven in cases of this nature; in referring in its instructions to evidence which was not introduced; and in referring in its instructions to particulars of the evidence which seek to establish the elements of the offense charged notwithstanding the stipulation of the parties not to make a summary of the evidence, thus creating before the jury a situation of unbalance against defendant's best interests. He specifically challenges the following part of the instructions:

(a) "THE COURT: .    .    .    .    .    .    .    .
. . . Now, what evidence has been introduced to you here seeking to corroborate the prosecutrix's testimony? A lady surnamed Espaillat Félix was brought to the witness stand, she owns a home for children, where the girl's mother, defendant's wife, took the girl on April 11, that is, *the day following the commission of the events,* during the afternoon, to try to shelter her there *because of what had happened to her with defendant, what had happened to her, and then the girl explained what had happened to her* . . . ." (Italics in the original.)

Appellant argues that the phrases in italics give for granted that the facts were committed; that nowhere in the evidence does it appear that appellant's wife took the prosecutrix to Mrs. Espaillat's house to be sheltered there.

We do not believe that the phrases in italics gave the impression that the court considered the facts as committed when by means of the instructions in general it was made clear to the jury that they were the only judges of the facts; that they were under the obligation to consider and weigh all the evidence and to determine whether to believe all or part of the testimony of each witness. Mrs. Espaillat testified that the prosecutrix's mother asked her "Whether it was possible for me to give some shelter in my institution to that girl."

(b) The second part of the instructions challenged refers to the testimony of Mrs. Mangual Rivera in relation to the admission made by appellant to her about his having lived with the prosecutrix. Appellant argues that reference was

not made to what was testified on cross-examination by that witness as to the fact that she was appellant's enemy because she had had an action at the O.P.A. and had told appellant once that if he gave her $500 she would help him. Also, appellant assigns that said lady testified that appellant "asked her to help him in the case" but it does not appear that this was two days after she had signed a statement.

Reference to Mrs. Mangual's testimony was made as another example of evidence of corroboration. Although we agree that it would have been preferable to have made some reference to her testimony that she was appellant's enemy, such omission, in the light of the instructions as a whole was not substantially prejudicial to appellant as to warrant a new trial. The request for help made by appellant to the witness was obviously made while they were talking when she went to see him.

Likewise he objects to the following part of the instructions:

"Now, indeed, there is evidence which seeks to establish the other elements of the offense. There is evidence introduced for your consideration. . . . In this case the point in conflict is the girl's mental state, which, according to the testimony of these experts, was a mental state which is tantamount to an imbecile, an imbecile with a maximum intelligence quotient of forty-five . . . ."

Appellant argues that the trial judge unduly limited the controversy to the legal capacity of the prosecutrix when the plea of not guilty implied a denial of all the essential facts of the information; that Dr. Guzmán did not testify that the prosecutrix was an imbecile; that the judge in referring to the testimony of one of the experts about the prosecutrix's state of imbecility should have also referred that on cross-examination this expert testified that the prosecutrix's writing required a minimum age of 9 to 10 years and that there could be university students who could not have done better;

that "the method employed by the trial judge of emphasizing those particulars in the evidence for the people which taken in its strongest context against defendant sought to establish the elements of the offense, without making a summary of the rest of the testimony of the witnesses . . . it creates a prejudicial unbalance to defendant's rights"; that the power of the judge, provided in the former § 233(8) of the Code of Criminal Procedure (34 L.P.R.A. § 712(8)), of ". . . pointing out wherein the main question and principal issues lie . . ." was left out of Rule 137 of the Rules of Criminal Procedure. Appellant objected to the instructions on the foregoing grounds.

There was no specific evidence that appellant had not had sexual intercourse with the prosecutrix. The whole case centered on whether the girl was mentally disabled and whether her testimony was corroborated. No controversy whatsoever arose during the trial concerning the fact that appellant had sexual intercourse with the prosecutrix. Although Dr. Guzmán did not specifically testify that the prosecutrix was an imbecile he did say that she was mentally disabled on account of a brain injury. We agree that it would have been advisable to call to the attention of the jury Dr. Senior's testimony about the notebooks and that the trial judge should have indicated to the jury that in passing upon the mental state of the prosecutrix they should take into consideration her testimony. However, in the light of the instructions as a whole given to the jury, these omissions did not cause substantial prejudice to appellant. *People* v. *García Pomales*, 94 P.R.R. 213, 217 (1967).

Appellant challenges, also, that part of the instructions which reads as follows:

"The evidence of corroboration in this particular case about the alleged mental incapacity of the prosecutrix to give her consent is equal to the testimony of the experts who testified about her mental disability. As you will remember, the girl did

not talk about her mental capacity. The prosecuting attorney has tried to prove her mental disability with the testimony of the experts, the expert gentlemen to whom you will apply the rules which I have explained to you to determine whether or not you can consider their testimony."

Appellant alleges, in effect, that reference should have been made to the prosecutrix's testimony. On this we have already expressed the view that this omission was not substantially prejudicial.

■ 8–9. He assigns that the trial judge erred in denying the following two instructions requested by the defense:

"1. A woman with a level of intelligence less than the one required by law to make a contract may give her consent to the sexual act without rape having been committed, if the woman has sufficient intelligence to know the nature of the act and gives her consent then the offense of rape is not committed.

"2. The mere fact that the woman with whom a defendant is charged to have had sexual intercourse has a mental age of less than 14 years, does not make him guilty of the offense of rape under an information which alleges that the woman was incapable to give legal consent on account of insanity or any other mental defect."

The evidence did not give rise to such instructions as it established that the prosecutrix had an intelligence quotient of an imbecile incapable of consenting to the sexual act or of weighing the nature and projecting the consequences of the act which she performed.

10. He maintains that the trial court erred in limiting the jury to return a verdict of acquittal in case it understood that the minor had legal capacity to give consent or in case that the jury doubted that she had that capacity.

Appellant alleged that he was entitled to have the jury specifically charged that if they had any doubt about whether appellant had had carnal intercourse with the prosecutrix whatsoever her mental state may have been, it was the duty of the jury to acquit him. He relies on the fact that upon

pleading not guilty he denied all the facts of the offense charged against him.

The objected instruction was, in its pertinent part, the following:

"If you come to believe, beyond any reasonable doubt, that this defendant, Carlos M. Cabrera Lozada, on that day, April 10, at 6:00 o'clock in the afternoon and in Mayagüez, Puerto Rico, unlawfully, willfully, maliciously, and criminally, lay with a woman which was not his own. That is, who was not his wife, named Zulimi Isabel Ramos Lange, fifteen years old, who at the time of performing said sexual act was incapable by a mental defect to give legal consent and that the said prosecutrix did not have conscience of the nature of said sexual act, then it will be your obligation to find this defendant guilty of the offense charged against him, that is, statutory rape.

"If you would understand, by the evidence introduced, that this girl was not mentally disabled at the time of the occurrence of the facts, April 10, 1965, or being so did not suffer such a mental disability that would inhibit her, that is, would render her incapable of understanding the consequences and the nature of the act which was being performed, then no offense would have been committed and you would be bound to return a verdict of not guilty in favor of the defendant.

"If you would have any reasonable and grounded doubt, as I have previously explained, doubt as to whether or not defendant is guilty and could not decide as to whether or not there existed the legal capacity which the law requires in these cases for consent to be given, then, the benefit of the doubt, as in all cases where there is doubt, has to be given in benefit of defendant, returning a verdict of not guilty in favor of defendant."

These parts of the instructions, within the entirety of the same, considered as a whole referred to the offense charged and, therefore, they conform to law.

■ 11–12. Finally, he assigns that the judgment is contrary to law and to the evidence heard and that in any event said judgment is the result of manifest error in the weighing of the evidence.

In support of these assignments appellant reproduces his previous arguments. He points out that the recital of the prosecutrix as to the place, manner, and circumstances in which the facts occurred is absurd; that there was no evidence of corroboration legally admissible and that the testimony of Mrs. Mangual was vitiated by passion, enmity, and rancor towards defendant.

We have considered the evidence in all its details and the instructions to the jury in connection to the same and the applicable law and, in our judgment, the jury did not err in its weighing of the same.

Therefore, the judgment rendered in this case by the Superior Court, Mayagüez Part, on April 25, 1966 must be affirmed.

Mr. Justice Pérez Pimentel concurs in the result. Mr. Justice Dávila did not participate herein.